(November 18, 2003)

■ HELEN C. SIEGER, Respondent-Appellant, v THE UNION OF ORTHODOX RABBIS OF THE UNITED STATES AND CANADA, INC., et al., Appellants-Respondents. [767 NYS2d 78]—

Order, Supreme Court, New York County (Martin Schoenfeld, J.), entered on or about January 28, 2002, which, to the extent appealed from as limited by the briefs, granted defendants' motion for summary judgment except to the extent of sustaining the first cause of action for intentional infliction of emotional distress against defendants Hersh Meir Ginsberg, also known as Zvi Meir Ginsberg, and Aryeh Ralbag, the eighth and tenth causes of action for defamation as to defendants The Union of Orthodox Rabbis of the United States and Canada, Inc., Hersh Meir Ginsberg, also known as Zvi Meir Ginsberg, Aryeh Ralbag, Haim Kraus, Elimelech Zalman Lebowitz and Solomon B. Herbst, and the fourteenth cause of action alleging that defendants Solomon B. Herbst and Beth Din Zedek of America-Ein Moshe (the Herbst defendants) aided and abetted Ginsberg to intentionally inflict emotional distress, and order, same court (Nicholas Figueroa, J.), entered on or about September 9, 2002, which, insofar as appealable, denied renewal, modified, on the law, to grant renewal and to dismiss the first, eighth, tenth and fourteenth causes of action against the various defendants, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

At issue on this appeal is whether plaintiff wife's claims for defamation, intentional infliction of emotional distress, and aiding and abetting the latter tort in the context of a religious divorce proceeding are justiciable or otherwise sufficient to survive the motions of the defendant rabbis and rabbinical courts for summary judgment to dismiss the complaint.

Insofar as plaintiff's claims are predicated upon challenges to the rabbinical tribunal's procedures and issuance of a "heter," or permission for the husband to remarry, instead of a "get," or religious divorce, review is proscribed by the First Amendment entanglement doctrine (see *Presbyterian Church in U.S. v Mary Elizabeth Blue Hull Mem. Presbyt. Church*, 393 US 440, 447 [1969]) as an infringement upon a religious community's "independence from secular control or manipulation" (*Kedroff v St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 US 94, 116 [1952]). Indeed: "The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doc-

trine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for" (*Watson v Jones*, 13 Wall [80 US] 679, 728-729 [1871]). The United States Supreme Court's subsequent statement that there might be "marginal civil court review" of an ecclesiastical tribunal's determination that is the direct result of fraud or collusion for secular purposes was dictum (*see Serbian E. Orthodox Diocese for U.S. of Am. & Canada v Milivojevich*, 426 US 696, 713 [1976]). In any event, plaintiff's allegation that the heter was fraudulently procured through bribery was unsubstantiated and speculative, and conclusively refuted by defendants' documentary evidence tendered in support of their renewal motion.

The allegedly defamatory statements which would require an examination of religious doctrine or practice, or an inquiry into the methodology of how the rabbinical tribunal arrived at its conclusions concerning questions of religious doctrine, such as whether plaintiff failed to respond to the summons of the rabbinical tribunal, are not actionable by virtue of the Establishment Clause of the First Amendment (*see Mandel v Silber*, 304 AD2d 538 [2003]; *Klagsbrun v Va'ad Harabonim of Greater Monsey*, 53 F Supp 2d 732 [1999], *affd* 263 F3d 158 [3d Cir 2001]). To the extent plaintiff has alleged defamatory statements which can be evaluated solely by the application of neutral principles of law and do not implicate matters of religious doctrine and practice, such as whether plaintiff is sane or is a fit mother, they are not barred by the Establishment Clause (*see Berger v Temple Beth-El of Great Neck*, 303 AD2d 346, 348 [2003]; *Klagsbrun, supra*). Nevertheless, those statements are subject to a qualified privilege, since they were made by the rabbis in a heter in the discharge of a private duty and in furtherance of a common interest of a religious organization (*Mihlovan v Grozavu*, 72 NY2d 506, 509 [1988]; *Matter of Kantor v Pavelchak*, 134 AD2d 352, 353 [1987]; *Kalika v Stern*, 911 F Supp 594, 603 [ED NY 1995]). Further, plaintiff has failed to

demonstrate that the statements were made with malice, as is required to overcome the privilege and render them actionable under a claim of defamation. Plaintiff's defamation claim is deficient on the additional ground that the publication element has not been met, since there is no evidence that defendants disclosed the existence or the substance of the heter to third parties unrelated to the heter process itself. Concur—Buckley, P.J., Mazzarelli, Saxe and Marlow, JJ.

Williams, J., concurs in a separate memorandum as follows: I concur with my colleagues to the extent that they find that plaintiff's claims should be dismissed; however, it is my view that dismissal should be based exclusively on lack of subject matter jurisdiction. The underlying controversy here involves the rabbinical tribunal's procedures in summoning plaintiff before it, the fairness and propriety of its going forward without granting plaintiff further opportunity to pursue a zabla procedure, the use of a heter instead of a get and related issues as to the circulation of the heter for signature, sufficiency of the proof supporting the signatures and the statements made in the heter. Plaintiff would have us rule that she duly commenced a zabla and that the tribunal improperly found her to be "recalcitrant" for disregarding its summons or hazmana, thereby having us determine whether the rabbinical tribunal properly acquired jurisdiction over plaintiff, and whether there was sufficient evidence before it to sustain its principal finding.

Review of these issues is inextricably linked to review and interpretation of ecclesiastical doctrine, law, practices, procedures and rulings, which is proscribed by the First Amendment entanglement doctrine (*Presbyterian Church in U.S. v Mary Elizabeth Blue Hull Mem. Presbyt. Church*, 393 US 440, 447 [1969]; *see also Park Slope Jewish Ctr. v Congregation B'nai Jacob*, 90 NY2d 517, 521 [1997]; *First Presbyt. Church of Schenectady v United Presbyt. Church*, 62 NY2d 110, 116-117 [1984], *cert denied* 469 US 1037 [1984]) as an infringement upon a religious community's "independence from secular control or manipulation" (*Kedroff v St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 US 94, 116 [1952]). The entanglement issue has been noted as an especial problem in the context before us, i.e., defamation claims arising out of a religious dispute (*see e.g. Klagsbrun v Va'ad Harabonim of Greater Monsey*, 53 F Supp 2d 732, 740-741 [1999], *affd* 263 F3d 158 [2001]; *Farley v Wisconsin Evangelical Lutheran Synod*, 821 F Supp 1286, 1290 [1993]; *see also Hutchison v Thomas*, 789 F2d 392, 393 [1986], *cert denied* 479 US 885 [1986]). Moreover, as the majority notes, quoting *Watson v Jones* (13 Wall [80

US] 679, 728-729 [1871]): "The right . . . to create tribunals . . . for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. *All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed.* It is of the essence . . . of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for." (Emphasis added.) Consequently, I would not reach the underlying merits of any of plaintiff's claims, but would dismiss purely based upon the nonjusticiable nature of this religious dispute.