FOURTH DEPARTMENT, APRIL, 2004

(April 30, 2004)

■ WENDE C. et al., Appellants, v UNITED METHODIST CHURCH, NEW YORK WEST AREA, Defendant, and WESTERN NEW YORK CONFERENCE OF UNITED METHODIST CHURCH et al., Respondents. [776 NYS2d 390]—

Appeal from an order of the Supreme Court, Monroe County (Andrew V. Siracuse, J.), entered October 2, 2002. The order dismissed the complaint and denied plaintiffs' motions and cross motion for summary judgment.

It is hereby ordered that the order so appealed from be and the same hereby is affirmed without costs.

Memorandum: Plaintiffs commenced this action against defendants, including the pastor of their former church and various ecclesiastical entities and officials, seeking to recover punitive damages as well as compensatory damages for pain and

suffering and mental anguish allegedly sustained as a result of an adulterous relationship between plaintiff Wende C. and the pastor, defendant Dr. G. Charles T. (defendant T.). Wende C. and her husband, plaintiff David C., allegedly were receiving pastoral counseling at the time of the sexual relationship. Supreme Court properly denied plaintiffs' motions and cross motion for summary judgment, searched the record and granted summary judgment sua sponte to defendant T. dismissing the complaint against him.

With regard to the first cause of action, alleging sexual battery, we note that all of the explicit allegations of lack of consent on the part of Wende C. relate to incidents of touching that occurred more than one year prior to commencement of the action. With regard to those incidents of intentional touching, therefore, the court properly dismissed that cause of action as time-barred (*see* CPLR 215 [3]; *Hart v Child's Nursing Home Co.,* 298 AD2d 721, 722 [2002]; *Sharon B. v Reverend S.,* 244 AD2d 878, 879 [1997]; *Doe v Roe,* 192 AD2d 1089, 1090 [1993]). With regard to those incidents of touching that occurred within one year of commencement of the action, we discern no explicit allegations nor any evidence indicative of lack of consent. Instead, the evidence in this record, including the averments of Wende C. and her contemporaneous e-mails and letters, establishes as a matter of law that the romantic attachment was mutual and the sexual contact consensual on the part of Wende C. (*see Sanders v Rosen,* 159 Misc 2d 563, 576 [1993], citing *Coopersmith v Gold,* 172 AD2d 982, 984 [1991]). Our conclusion on the issue of defendant T.'s liability for battery with regard to the most recent incidents would of course be different if force were alleged or if Wende C. suffered from some legal disability, such as infancy, mental impairment, or physical helplessness, precluding a consensual sexual relationship (*see generally Jeffreys v Griffin,* 1 NY3d 34, 41 n 2 [2003], citing PJI2d 3:3 [2003]). No such disability is even arguably present here, and we cannot find one based on the existence of a counseling relationship.

The court further properly granted defendant T. summary judgment dismissing the cause of action for intentional infliction of emotional distress against him. The conduct alleged was not so "extreme and outrageous" as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (*Murphy v American Home Prods. Corp.,* 58 NY2d 293, 303 [1983], quoting Restatement [Second] of Torts § 46, Comment *d*; *see Lightman v Flaum,* 278 AD2d 373, 374 [2000], *affd* 97 NY2d 128 [2001], *cert denied* 535

US 1096 [2002]; *see generally Howell v New York Post Co.,* 81 NY2d 115, 121 [1993]; *Freihofer v Hearst Corp.,* 65 NY2d 135, 143 [1985]).

The court also properly granted defendant T. summary judgment dismissing the cause of action for clergy malpractice against him. No such cause of action is cognizable in New York, because any attempt to define the duty of care owed by a member of the clergy to a congregant or parishioner would result in excessive entanglement on the part of the court in matters of religion (*see Langford v Roman Catholic Diocese of Brooklyn,* 271 AD2d 494, 495 [2000]; *Joshua S. v Casey,* 206 AD2d 839 [1994]; *Schmidt v Bishop,* 779 F Supp 321, 327-328 [1991] [applying New York law]).

We further conclude that the court properly dismissed the complaint against defendant T. insofar as it may be construed to allege a breach of fiduciary duty. At the outset, we note that the closest plaintiffs have come to alleging a breach of fiduciary duty is their allegation that, in carrying on a sexual affair with Wende C., defendant T. breached "the sacred trust between counselor and careseeker in the course of the ministerial relationship." That purported cause of action might aptly be labeled one for "clergy misconduct" or perhaps "abuse of pastoral position," inasmuch as pleading a breach of fiduciary duty is, in this context, merely " 'an elliptical way of alleging clergy malpractice' " (*Franco v Church of Jesus Christ of Latter-day Saints,* 21 P3d 198, 205 [Utah 2001]; *see Dausch v Rykse,* 52 F3d 1425, 1429, 1438 [7th Cir 1994] [applying Illinois law]; *Schieffer v Catholic Archdiocese of Omaha,* 244 Neb 715, 720-721, 508 NW2d 907, 912 [1993]; *Schmidt,* 779 F Supp at 326).

Even accepting plaintiffs' characterization, we nevertheless conclude that there is no meaningful analytical distinction between a cause of action for breach of fiduciary duty by a cleric and one for clergy malpractice. Therefore, for the same reasons that a cause of action for clergy malpractice is not cognizable, a cause of action for breach of fiduciary duty by a cleric may not be predicated on the allegations set forth in this case (*see Langford,* 271 AD2d at 495; *Schmidt,* 779 F Supp at 325-326). An inquiry into whether a cleric violated a fiduciary duty to a congregant would involve the court in the same excessive entanglement in religious affairs as an inquiry into whether the cleric violated a duty of due care owed to the congregant. In either case the court would be required to " 'venture into forbidden ecclesiastical terrain' " (*Langford,* 271 AD2d at 495; *see Schmidt,* 779 F Supp at 325-326). In terms of the examination necessitated into the moral precepts, theology, and rules of

governance of a particular church and religion, we see no distinction between positing a clerical duty of due care (as under the law of negligence) and positing a clerical duty of due care, loyalty, fidelity, honesty and good faith (as under the law governing the conduct of fiduciaries). There is likewise no appreciable difference in the nature of the inquiries into whether a cleric might have been careless, and whether he might have been neither careful nor morally and ethically upright. In either instance, the court's task would be the impermissible one of determining whether the cleric "grossly abused his pastoral role" (*Schmidt*, 779 F Supp at 326) or otherwise breached his "duties as a member of the clergy offering religious counseling to the plaintiff" (*Langford*, 271 AD2d at 495). In either instance, the court would have to compare the cleric's behavior with what it should have been, vocationally and religiously speaking.

In our view, plaintiffs' unpleaded claim for breach of fiduciary duty cannot be resolved in accordance with neutral principles of law, i.e., without any judicial inquiry into religious precepts. In other words, the claim cannot be adjudicated without reference to the status, role, and expected behavior of defendant T. as a pastor,from which his status and all of his credentials as a counselor derive. In that regard, we note that defendant T. was not a therapeutic counselor with any state license or state-recognized credentials, but rather was merely a religious counselor. There is thus no basis for concluding that the pastoral counseling relationship and behavior in question may be regarded as essentially secular in nature. Indeed, according to the explicit allegations of the complaint, the matter of religion, and more particularly the "ministerial relationship," "is not 'merely incidental' to . . . plaintiff[s'] relationship with . . . defendant [T.], 'it is the foundation for it' " (*Amato v Greenquist,* 287 Ill App 3d 921, 932, 679 NE2d 446, 454 [1997]; *see Teadt v Lutheran Church Missouri Synod,* 237 Mich App 567, 580, 603 NW2d 816, 823 [1999]). Thus, if defendant T. is to be judicially stripped of his status as plaintiffs' pastor, then he cannot legally be regarded as a counselor either, because he has no secular standing or credentials as such (*see Langford v Roman Catholic Diocese of Brooklyn,* 177 Misc 2d 897, 901-902 [1998], *affd* 271 AD2d 494 [2000]). In that event, plaintiffs' claim against defendant T. would allege nothing more than the common-law causes of action for alienation of affections and criminal conversation, which are no longer recognized in New York as bases for the imposition of tort liability (*see* Civil Rights Law §§ 80-a, 84; *Langford,* 177 Misc 2d at 902 n 15). Indeed, the only circumstance that distinguishes the relationship between Wende C. and defendant T. from the ordinary adulterous relationship is the fact that de-

fendant T. is a minister. Because a tort action based strictly upon adulterous conduct is prohibited by the Civil Rights Law, liability, if any, must arise from defendant T.'s status as a minister. However, to impose greater liability on an adulterer who happens to be a minister than on any other adulterer would, in our view, violate constitutional principles.

We are thus unable in this context to discern any distinction between a claim for clergy malpractice and one for the breach by a cleric-counselor of his fiduciary duty to his congregants/counselees. In particular, we fail to see how it avoids concerns of "excessive entanglement" to posit that defendant T. was guilty of a breach of a "trust" or "confidence" as opposed to a duty of due care. "Trust" and "confidence" are, like "due care," merely shorthand for plaintiffs' legitimate legal expectations, and here all of plaintiffs' expectations stemmed from plaintiffs' status as congregants and defendant T.'s status and role as plaintiffs' pastor-counselor. Indeed, the only trust or confidence alleged here is that defendant T. would not abuse his clerical obligations to and pastoral authority over plaintiffs, which obligations and authority are derived completely from the tenets of the particular religion and church to which plaintiffs and defendant T. belonged. Contrary to the dissent's position, the religious entanglements are not avoided by analyzing the claim on the basis of the specific fiduciary relationship of trust allegedly existing between the cleric and his congregants in a particular counseling relationship, as opposed to a more generalized standard of care to be adhered to by all clergy in all of their dealings with their congregants. In either case, it could be only the status and role of defendant T. as a pastor-counselor that would render him a fiduciary answerable for the breach of plaintiffs' trust by engaging in an adulterous relationship with Wende C.

In view of the foregoing, we conclude that the court further properly granted the motion and cross motions of the remaining defendants for summary judgment dismissing the complaint against them. In the absence of any wrongful or actionable underlying conduct by defendant T., there can be no imposition of vicarious liability against any alleged employer or principal of defendant T. pursuant to the doctrine of respondeat superior (*see Karaduman v Newsday, Inc.*, 51 NY2d 531, 545-546 [1980]; *Nichols v Niagara Mohawk Power Corp.*, 37 AD2d 909, 910 [1971], *affd* 33 NY2d 670 [1973]; *cf. Richardson v New York Univ.*, 202 AD2d 295, 297 [1994]; *see generally Bing v Thunig*, 2 NY2d 656, 666-667 [1957]). Further, even if there had been some actionable conduct on the part of defendant T., there can be no respondeat superior liability where, as here, the conduct

was not committed within the scope or furtherance of the employment or agency (*see N.X. v Cabrini Med. Ctr.,* 97 NY2d 247, 251 [2002]; *McKay v Healthcare Underwriters Mut. Ins. Co.,* 295 AD2d 686, 687 [2002], *lv denied* 99 NY2d 503 [2002]; *Paul J.H. v Lum,* 291 AD2d 894, 895 [2002]; *Kenneth R. v Roman Catholic Diocese of Brooklyn,* 229 AD2d 159, 161 [1997], *cert denied* 522 US 967 [1997], *lv dismissed* 91 NY2d 848 [1997]; *Joshua S. v Casey,* 206 AD2d 839 [1994]; *Mary KK. v Jack LL.,* 203 AD2d 840, 841 [1994]).

The court further properly dismissed the complaint against the remaining defendants insofar as it may be construed to allege negligent ordination of defendant T. The ordination of clergy is a "quintessentially religious" activity, and imposing liability for conferring that status would excessively entangle the court in religious affairs, in violation of the First Amendment (*see Kenneth R.,* 229 AD2d at 162-163). Moreover, in the absence of any actionable conduct by defendant T., plaintiffs may not recover from any of the remaining defendants for their alleged negligence in hiring, supervising, or retaining him (*see Primeau v Town of Amherst,* 303 AD2d 1035, 1036 [2003]; *cf. Borden v Capital Dist. Transp. Auth.,* 307 AD2d 1059, 1061-1063 [2003]; *Acevedo v Audubon Mgt.,* 280 AD2d 91, 97-98 [2001]).

All concur except Pigott, Jr., P.J., and Scudder, J., who dissent in part and vote to modify in accordance with the following memorandum.

Pigott, Jr., P.J., and Scudder, J. (dissenting in part). We respectfully dissent in part. First, in our view, Supreme Court improperly granted summary judgment to defendant Dr. G. Charles T. (defendant T.) on plaintiffs' sexual battery cause of action, and, specifically, with regard to those incidents of alleged touching that occurred during counseling between defendant T. and plaintiff Wende C. within one year of commencement of the action. Second, the court improperly granted summary judgment to defendant T. with regard to plaintiffs' breach of fiduciary duty cause of action. Third, the court improperly granted those parts of the motion of defendants Western New York Conference of the United Methodist Church (Conference) and David Lubba and the cross motion of defendant Bishop Hae-Jong Kim for summary judgment dismissing plaintiffs' claims of negligent supervision and retention against them.

It is beyond cavil that a court must not assess credibility on a motion for summary judgment (*see Ferrante v American Lung Assn.,* 90 NY2d 623, 631 [1997]). "Summary judgment should not be granted if 'there is any doubt as to the existence of factual issues . . . or where the issue is arguable' " (*Gateway Dev. & Mfg. v Commercial Carriers,* 296 AD2d 821, 825 [2002]).

Applying those well-established principles to this appeal, we turn first to plaintiffs' sexual battery cause of action and conclude that plaintiffs made a prima facie showing of entitlement to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Plaintiffs submitted evidence in admissible form establishing that a counseling relationship did indeed exist between Wendy C. and defendant T. between November 2, 1999 and February 2000. Contrary to the conclusion of the majority, plaintiffs also submitted admissible evidence establishing that four instances of unwanted touching occurred within that time frame and, hence, within the applicable statute of limitations for sexual battery, to wit: defendant T. instructed Wendy C. to perform oral sex on him on November 2, 1999; engaged in sexual fondling and other sexual acts with her in her car after a counseling session on November 16, 1999; grabbed and kissed her on December 24, 1999; and touched her breasts and genitals after a January 21, 2000 counseling session. Furthermore, in her affidavit in support of the motion, Wendy C. averred that the incidents of unwanted sexual contact occurred at a time when she was unable to fully consent because of defendant T.'s control and influence over her as her counselor. In our view, far from "establish[ing] as a matter of law that the romantic attachment was mutual," the evidence submitted by plaintiffs is sufficient to meet their burden of establishing their entitlement to judgment as a matter of law (*see Alvarez* at 324). We submit that both the majority and Supreme Court have made credibility determinations that are inappropriate at the prediscovery stage of this action (*see Ferrante*, 90 NY2d at 631).

Defendant T. did not oppose plaintiffs' motion against him. Rather, the court sua sponte granted summary judgment to him on the sexual battery cause of action. We submit that was error. While we do not dispute the court's power to review the record and grant summary judgment in the absence of a motion (*see* CPLR 3212 [b]), in our view, there is no evidence in the record rebutting plaintiffs' allegations that a counseling relationship existed. Defendant T.'s unsigned, unverified statement to a church committee in response to Wendy C.'s allegations, in which defendant T. alleges that he and Wendy C. were "not engaged in an active or particular counseling relationship at the time of our inappropriate involvement," is of no evidentiary value because it was not submitted in admissible form. Even if the statement had been verified, it would have merely given rise to competing versions of the same events, which precludes an award of summary judgment to defendant T. on the sexual battery cause of action.

We agree with the majority that there is no cognizable claim for clergy malpractice in this state. Such a claim would rest on the violation of a generalized professional standard (*see Schmidt v Bishop*, 779 F Supp 321, 327 [1991]) and would involve excessive entanglement on the part of the court in matters of religion (*see Langford v Roman Catholic Diocese of Brooklyn*, 271 AD2d 494, 495 [2000]; *Joshua S. v Casey*, 206 AD2d 839 [1994]). However, we further conclude that the court erred in dismissing the complaint against defendant T. insofar as it asserts a breach of fiduciary duty cause of action. In their complaint, plaintiffs allege that the sexual relationship between Wendy C. and defendant T. was a breach of "the sacred trust between counselor and careseeker." Moreover, such a cause of action was specifically asserted in plaintiffs' motions and cross motion with regard to both plaintiffs, countered by defendants and addressed by the court. We thus conclude that a cause of action based on breach of fiduciary duty is properly before this Court (*see* CPLR 3026; *City of Syracuse v R.A.C. Holding*, 258 AD2d 905 [1999]).

We disagree with the majority's conclusion that "there is no meaningful analytical distinction between a claim of breach of fiduciary duty by a cleric and one for clergy malpractice." In our view, there is a subtle and important difference between a clergy malpractice cause of action and one sounding in breach of fiduciary duty. A cause of action based upon breach of fiduciary duty rests not on the violation of a generalized professional standard, but on the abuse of a particularized relationship of trust (*see Mandelblatt v Devon Stores*, 132 AD2d 162, 168 [1987], quoting Restatement [Second] of Torts § 874, Comment *a* [" 'A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation' "]). As an oft-cited recitation of the definition of a fiduciary relation states: "Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another" (*Penato v George*, 52 AD2d 939, 942 [1976], *appeal dismissed* 42 NY2d 908 [1977]; *see WIT Holding Corp. v Klein*, 282 AD2d 527, 529 [2001]). "The term [fiduciary relationship] is a very broad one. It is said that the relation exists, and that relief is granted *in all cases* in which influence has been acquired and abused, in which confidence has been reposed and betrayed. *The origin of the confidence and the*

*source of the influence are immaterial" (Northeast Gen. Corp. v Wellington Adv.*, 82 NY2d 158, 172 [1993] [Hancock, Jr., J., dissenting] [citations omitted and emphasis added]).

"While the 'exact limits' of what constitutes a fiduciary relationship are 'impossible of statement,' a fiduciary relationship may be found in any case 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed' " (*United Feature Syndicate v Miller Features Syndicate*, 216 F Supp 2d 198, 218 [2002], quoting *Penato*, 52 AD2d at 942; *see Rose v Simms*, 1995 WL 764226, *9, 1995 US Dist LEXIS 17686, *27 [SD NY, Dec. 27, 1995]). Thus, while the existence of a clergy malpractice claim would depend on defining and evaluating a cleric's religious duty, a claim for breach of fiduciary duty depends only upon an evaluation of whether a relationship of trust and confidence exists and whether that trust and confidence have been abused.

Further, we disagree with the majority's emphasis on defendant T.'s lack of official counseling credentials as evidencing the absence of a fiduciary duty. The existence of a fiduciary duty—or defendant T.'s status as a "secular" counselor—does not, in our view, depend on such official credentials (*see Penato*, 52 AD2d at 942). That is especially true in light of the record evidence that defendant T. touted his experience as a counselor using "secular" counseling tools and techniques.

The majority fears "excessive entanglement" in religion and uses that fear as a basis to deny recognition of such a breach of fiduciary duty claim in New York State. In this vein, the majority asserts that a "court's task would be the impermissible one of determining whether the 'defendant grossly abused his pastoral role' " (citations omitted). In our view, the majority's "all or nothing" approach—a cleric is at all times, and for all purposes, acting on behalf of his or her religion, and therefore there can be no inquiry into his or her actions without "entangling" oneself in religion—is unwarranted. We submit that the majority's analysis destroys the "neutral principles" doctrine adopted by the Court of Appeals to resolve disputes involving religious organizations (*see First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.*, 62 NY2d 110, 116 [1984], *cert denied* 469 US 1037 [1984]; *Avitzur v Avitzur*, 58 NY2d 108, 114 [1983], *cert denied* 464 US 817 [1983] ["a State may adopt any approach to resolving religious disputes which does not entail consideration of doctrinal matters . . . us-(ing) the 'neutral principles of law' approach," quoting *Jones v Wolf*, 443 US 595, 603 (1979)]; *see also Park Slope Jewish Ctr. v Congregation B'nai Jacob*, 90 NY2d 517, 521 [1997] ["we (have)

adopted and applied the 'neutral principles of law' analysis as a matter of State law'']). Other courts of this State also have applied the neutral principles doctrine (*see Sieger v Union of Orthodox Rabbis of U.S. & Canada*, 1 AD3d 180 [2003]; *Sam v Church of St. Mark*, 293 AD2d 663, 664 [2002]; *Trustees of Diocese of Albany v Trinity Episcopal Church of Gloversville*, 250 AD2d 282 [1999]).

In our view, the majority's approach to this case renders the "neutral principles" doctrine meaningless. The majority's holding forbids all inquiry into matters of fiduciary duty by virtue of the fact that defendant T. is a pastor and impermissibly insulates clerics from all liability in a counseling context. Indeed, the majority's holding could be misconstrued to encourage secular counselors to posture their counseling in terms of spiritual guidance. As the aforementioned case law makes clear, courts have the power to resolve disputes involving religious persons and organizations to the extent that they can do so without examining religious doctrine or dogma (*see Matter of New York State Empl. Relations Bd. v Christ the King Regional High School*, 90 NY2d 244, 250 [1997] [" ' "the line of separation (between church and state), far from being a 'wall,' is a blurred, indistinct, and variable barrier depending upon all the circumstances of a particular relationship" ' "]). As the Second Department has properly noted: "[W]hile the First Amendment to the United States Constitution prohibits regulation of religious beliefs, *conduct* by a religious entity 'remains subject to regulation for the protection of society' . . . The First Amendment does not grant religious organizations absolute immunity from tort liability . . . Therefore, religious entities must be held accountable for their actions, 'even if that conduct is carried out as part of the church's religious practices' " (*Kenneth R. v Roman Catholic Diocese of Brooklyn*, 229 AD2d 159, 165 [1997] [internal citations omitted], *cert denied* 522 US 967 [1997], *lv dismissed* 91 NY2d 848 [1997]).

Contrary to the majority's fear of "ventur[ing] into forbidden ecclesiastical terrain" (internal quotation marks omitted), we submit that our proposed inquiry does not entail excessive probing into church doctrine in this case. First, the record establishes that defendant T. and the defendant ecclesiastical entities have admitted that defendant T. engaged in an inappropriate relationship with Wendy C. in the eyes of the church and its doctrine, and that the behavior of defendant T. was outside the scope of his employment. In our view, those admissions obviate the need for any inquiry into defendants' religious tenets (*see New York State School Bds. Assn. v Sobol*, 79 NY2d 333, 342-

343 [1992], *cert denied* 506 US 909 [1992] [rejecting as "entirely speculative" an "excessive entanglement" assertion where "any religious input is not likely to rise to anything approaching the required 'excessive' entanglement level"]). More obvious, however, is the fact that probing the circumstances of this case does not require an examination of the religious beliefs held by plaintiffs or defendants. Instead, the only inquiry required would be whether Wendy C. or her husband, plaintiff David C., placed a level of trust in defendant T. with regard to their marriage and their separate counseling relationships with him, and whether defendant T. abused that trust. In light of defendant T.'s admissions of impropriety concerning Wendy C., as well as evidence in the record that defendant T. had used secular counseling techniques with both Wendy C. and David C., any inquiry would clearly not delve into religious doctrine. In sum, there is no venture into ecclesiastical terrain here, and therefore no excessive entanglement.

Thus, we submit that issues of fact exist that preclude summary judgment on plaintiffs' breach of fiduciary duty cause of action, specifically with respect to whether (1) Wendy C. placed trust and confidence in defendant T. to counsel her to wellness and to avoid any sexual contact, especially in light of her explicitly stated desire to end the counseling relationship because of the possibility of romantic/sexual involvement; (2) David C. placed trust and confidence in defendant T. to help his marriage and avoid further harm to his marriage; and (3) defendant T. undertook the trust and confidence reposed in him by both Wendy C. and David C. and then abused that trust and confidence. In our view, such an inquiry entails nothing more nor less than an examination of the reposed and allegedly abused trust and avoids an inquiry into religious doctrine.

Finally, we would deny those parts of the motion of Conference and Lubba and the cross motion of Hae-Jong Kim for summary judgment dismissing plaintiffs' claims of negligent supervision and retention against them. In our view, plaintiffs met their burden in opposition by tendering sufficient evidence to raise issues of fact warranting a trial regarding those remaining defendants' notice or knowledge of defendant T.'s tendencies to sexually abuse congregants and/or the actual conduct at issue here. However, we conclude that the court properly granted the cross motion of defendant Hosanna Junction United Methodist Church (Hosanna Junction) for summary judgment dismissing the complaint against it. Hosanna Junction met its initial burden of establishing its entitlement to judgment as a matter of law, and plaintiffs failed to raise a material issue of fact suf-

ficient to warrant a trial on the issue whether Hosanna Junction could be held liable for the hiring, firing or supervision of defendant T.

We therefore would modify the order by vacating the award of summary judgment to defendant T. in part, reinstating plaintiffs' sexual battery and breach of fiduciary duty causes of action against him, and denying the motion of Conference and Lubba and the cross motion of Hae-Jong Kim in part, reinstating plaintiffs' claims of negligent supervision and retention against them. Present—Pigott, Jr., P.J., Wisner, Hurlbutt, Scudder and Kehoe, JJ.