New Eagle Inc. v H.R. Neumann Assoc., Inc. (2004 NY Slip Op 50724(U))

[*1]

New Eagle Inc. v H.R. Neumann Assoc., Inc.

2004 NY Slip Op 50724(U)

Decided on July 1, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 1, 2004

Supreme Court, Kings County
THE NEW EAGLE INC., Plaintiff,
against
H.R. NEUMANN ASSOCIATES, INC. Defendant.
4694/04

Yvonne Lewis, J.
New Eagle Inc., the plaintiff and tenant, requests that this Court grants its application for a Yellowstone injunction enjoining and restraining the defendant, H.R. Neumann Associates, Inc., from terminating its lease pending the resolution of the underlying action.
According to First National Stores v. Yellowstone Shopping Center, Inc., and its progeny, New York courts have established four elements, which a tenant must satisfy in order for a Yellowstone injunction to be granted, to wit, (i) the existence of a commercial lease; (ii) receipt from the landlord of a notice of default thereunder, a notice to cure such default, or a threat of termination of the lease; (iii) application for the issuance of an injunction, made prior to the lease's termination; and (iv) the tenant's ability and desire to cure the alleged default, by any means short of vacating the premises. The purpose of the Yellowstone injunction is to maintain the status quo so that a commercial tenant may protect its valuable property interest in its lease while challenging the landlord's assessment of its rights. Post v. 120 E. End Ave. Corp., 62 N.Y.2d 19, 26, 475 N.Y.S.2d
821, 824, 464 N.E.2d 125, 127 (1984); Garland v. Titan West Assocs., 147 A.D.2d 304, 307, 543 N.Y.S.2d 56, 58-59 (1st Dep't 1989); Jemaltown of 125th St. v. Leon Betesh/Park Seen Realty Assocs., 115 A.D.2d 381, 382, 496 N.Y.S.2d 16, 17 (1st Dep't 1985).
Plaintiff contends that the court should grant its application for a Yellowstone injunction enjoining and restraining the defendant from terminating plaintiff's lease on the basis that it is not a "month-to-month" tenant whose tenancy has expired. To the contrary, plaintiff maintains that it holds a valid long term (20 year) lease that does not expire until July 31, 2019. Plaintiff wants to maintain the status quo and continue conducting business at the location while challenging the landlord's contention that it only has a periodic tenancy. Plaintiff claims that he can satisfy all of the criteria necessary for the issuance of a Yellowstone injunction in as much as it can demonstrate that it (i) holds a commercial lease; (ii) received a notice of termination which threatens its leasehold interests; (iii) timely requested injunctive relief; and (iv) without conceding the existence of any defaults, is ready, willing, and able to cure any alleged defaults.
[*2]
According to the plaintiff, the defendant seeks to enforce the terms of the Beth Din arbitration award by terminating plaintiff's lease, and the plaintiff points out that the defendant cannot terminate its lease until a successful motion has been made for confirmation of the arbitration award. In plaintiff's February 24, 2004 correspondence, plaintiff argues that it is well accepted that the failure to confirm an arbitration award within one year of its delivery precludes its judicial enforcement. CPLR 7510; Forhill Gardens, Inc. v. Bevona, 225 A.D.2d 331, 638 N.Y.S.2d 468 (1st Dep't 1996). Defendant, citing to Sieger v. Union of Orthodox Rabbis of the United States and Canada, Inc., 1 A.D.3d 180, 767 N.Y.S.2d 78 (1st Dep't 2003), counters that an award rendered by the Beth Din is binding upon the courts. In Sieger, which arose from a religious divorce proceeding, plaintiff challenged the Beth Din's procedures with respect to the application of religious law, as well as the methodology that the Beth Din used to reach conclusions concerning questions of religious doctrine. The court held that the First Amendment prohibited judicial review of the Beth Din's procedures and methodology.
In opposition the defendant asserts that "the plaintiff's motion makes it seem that the plaintiff has a long-term lease running through 2019 and that the defendant, out of the blue, just served the plaintiff with a Thirty-Day Termination Notice, dated January 9, 2004 (the "Thirty Day Notice"), in the middle of the lease term." See Affidavit in Opposition to Plaintiff's Motion for Preliminary Relief ("Neumann Aff.") at para. 2. The defendant maintains, however, that a religious Tribunal, a Beth Din, issued arbitration awards, dated July 16, 2003 and November 25, 2003 decreed, to the effect that the parties lease was terminated as of July 16, 2003. Thereafter, commencing on July 17, 2003, plaintiff became a month-to-month tenant as a matter of law, and defendant properly terminated the month-to-month tenancy by the service of the Notice more than 30 days prior to the expiration of its tenancy. Defendant claims that while the notice served upon the tenant necessarily threatens to terminate the lease, the notice must, as a matter of law, also be susceptible to a cure and the tenant must show that it is "prepared and maintains an ability to cure the alleged default" in order to afford the protection of a Yellowstone injunction. Defendant states that none of the cases relied upon by the plaintiff, in its February 24, 2004 correspondence, indicate that the notice must be susceptible to a cure and that the tenant must be prepared and have an ability to effect a cure. In addition, none of the cases relied upon by plaintiff or reviewed by the Court involve the issuance of a "Thirty-Day Notice" which is clearly not susceptible to a cure. Consequently, defendant argues that there is no cure period here for this Court to toll or to stay. The defendant points out that if plaintiff believes that it is not a "month-to-month" tenant, it may raise this argument in the context of a summary holdover proceeding.
In regards to the issue of whether the "Beth-Din" Awards must be court approved, the defendant states that the Appellate Division, Second and First Departments have uniformly held that a Rabbinical Court award need not be confirmed in order to have res judicata and/or collateral estoppel effect upon the courts (e.g., County of Rockland v. Aetna Casualty & Surety Company, 129 A.D.2d 606, 514 N.Y.S.2d 102 (2d Dept 1987); Hilowitz v. Hilowitz, 85 A.D.2d 621, 444 N.Y.S.2d 948 (2d Dept. 1981)). Finally, defendant asserts that the plaintiff's attempt to distinguish the appellate court's holding in Sieger v. Union of Orthodox Rabbis of the United States and Canada, Inc., 1 A.D.3d 180, 767 N.Y.S.2d 78 (1st Dept 2003) is meritless. [*3]Defendant maintains that Sieger stands for the proposition that the First Amendment entanglement doctrine unequivocally proscribes review of any claims arising out of a rabbinical tribunal not just a review of the rabbinical court's internal procedures or methodology.
To determine the request of the movant this court must consider questions; the availability of the Yellowstone injunction is dependant upon meeting the aforesaid elements set forth in the Yellowstone case. To invoke the protection of the Yellowstone injunction, the plaintiff must (1) show the existence of a commercial lease. There is no dispute that there was a lease agreement between these parties. The plaintiff has clearly been (2) presented with a threat of termination of the lease, having been given a "thirty day notice" by the defendant and (3) the plaintiff has made a timely application for the issuance of the injunction, if there is an existing lease notwithstanding the termination by the Rabbinical arbitration. Finally, the plaintiff must show that it has the ability and desire to cure the default. The question for this court is, does the Beth Din award control as to whether there is a lease?
The Court finds that the facts presented establish that there was a lease agreement and a memorandum of understanding by and between the parties. Pursuant thereto, Beigeleisen and Moskovits agreed to submit any Lease-related disputes to binding Rabbinical Arbitration before a Rabbinical Arbitrator. Furthermore, the memorandum of understanding provided that if Beigeleisen's employment with Tenant was involuntarily terminated by Moskovits, then the Lease would be cancelled. It appears that in or about November 2000, Moskovits involuntarily terminated Beigeleisen's employment with Tenant. Based upon this involuntary termination, a dispute arose between the two tenants, which led to and it went to Rabbinical Arbitration under the auspices of the Beth Din Zedek of America-Ein Moshe (the "Rabbinical Court"). On February 28, 2003, the Rabbinical Court decreed that Moskovits was to provide Beigeleisen with an accounting of Tenant's business from the date Beigeleisen's employment was terminated. Notwithstanding the foregoing directive, Moskovits failed to provide Beigeleisen with the accounting. Accordingly, by award, dated July 16, 2003, the Rabbinical Court decreed that, if Moskovits did not deliver the accounting within 45 days, the Lease would be deemed canceled. As Moskovits failed to provide Beigeleisen with the requested Accounting pursuant to the Award, on November 25, 2003, the Rabbinical Court decreed that the Lease was canceled retroactively as of July 16, 2003.
 Based upon the termination of the Lease by the Rabbinical Court the defendant contends that pursuant to Real Property Law Section 232-c, in the case of a holding over by a tenant after expiration of a term longer than one month, it could "proceed, in any manner permitted by law, to remove the tenant, or if the landlord shall accept rent for any period subsequent to the expiration of such term, then, unless an agreement either express or implied is made providing otherwise, the tenancy created by the acceptance of such rent shall be a tenancy from month to month commencing on the first day after the expiration of such term ...." This court agrees.
As of July 17, 2003, the plaintiff became a month-to-month tenant of the premises, whose tenancy was properly noticed for termination by the Landlord's 30 day notice, if the Beth Din award stands. Both parties hereto or for that matter any party to an arbitration is given the right to bring a proceeding to confirm or contest the arbitrator's award. CPLR §§ 215 (5) and 7510. Tenants herein, Beigeleisen and Moskovits , as part of their memorandum of [*4]understanding agreed "that neither party [would] resort to any other jurisdiction other than resolution of disputes before the Rabbinical Arbitrator." Having so agreed to be bound by the Rabbinical Court on issues which may otherwise have been reviewable by this court, both side are bound by the decision of that Court. Since it is clear that a Rabbinical Court award need not be judicially confirmed in order to have binding res judicata and/or collateral estoppel effect upon the courts County of Rockland v. Aetna Casualty & Surety Company, 129 A.D.2d 606, 514 N.Y.S.2d 102 (2d Dept 1987); Hilowitz v. Hilowitz, 85 A.D.2d 621, 444 N.Y.S.2d 948 (2d Dept. 1981), there is no need for the Court to consider that argument at this time. Since the Rabbinical Award stands, there has been no Lease since July 16, 2003. The plaintiff is a month to month tenant and cannot cure a thirty day notice. The Court finds that the plaintiff cannot satisfy the four elements necessary to invoke the protection of a Yellowstone injunction. Although, the plaintiff has established that it held a commercial lease and that the thirty-day eviction notice served as a threat of termination of the lease, said notice is not susceptible to a cure. Even if its application for a temporary restraining order was made prior to the termination of the lease, the plaintiff does not have the ability to affect a cure in this case: it would appear that it was not. The purpose of a Yellowstone injunction is to toll the running of the cure period in the landlord's notice to cure so that, after determination of the merits, the tenant may cure the defect and avoid a forfeiture of the leasehold. Hollymount Corp. v. Modern Business Associates, Inc., 140 A.D.2d 410, 528 N.Y.S.2d 113 (1988, 2d Dept). In the case at hand, there is simply no "cure" period for this Court to toll or to stay. This constitutes the decision and order of this Court.
______________________________
 Hon. Yvonne Lewis