OPINION OF THE COURT
Shirley Werner Kornreich, J.
Motion sequences 001, 002 and 003 are hereby consolidated for disposition.
This is an action by a parishioner against his former minister and marriage counselor, defendant Dr. Thomas K. Tewell, of the Fifth Avenue Presbyterian Church, an alleged affiliate of the Presbytery of New York City. The action seeks damages for breach of fiduciary duty, intentional infliction of emotional distress, and negligent retention and supervision. Defendants move, prior to answering, to dismiss the complaint on the ground that plaintiff has failed to allege a cause of action. Defendants posit their motion on the following theories: (1) there is no cause of action for clergy malpractice in New York; (2) a claim of breach of fiduciary duty by a member of the clergy is indistinguishable from a claim for clergy malpractice; (3) recognizing a breach of fiduciary duty claim by a member of the clergy violates the First Amendment because it would involve the courts in evaluations of ecclesiastical doctrine and religious practices; (4) plaintiff’s intentional infliction of emotional distress claim is essentially a “heart balm” action that is not *975 cognizable in New York; and (5) the Church and Presbytery (collectively Church defendants) cannot be held liable for negligent supervision or retention because there is no underlying theory of liability and because Tewell’s actions were outside the scope of his employment.
The facts alleged are contained in the amended complaint.* On a motion to dismiss, the facts alleged in the complaint are accepted as true and the plaintiff is entitled to the benefit of every favorable inference. (Rovello v Orofino Realty Co., 40 NY2d 633, 634 [1976]; Merrill Lynch, Pierce, Fenner & Smith, Inc. v Wise Metals Group, LLC, 19 AD3d 273, 275 [1st Dept 2005].)
The following facts are pleaded in the amended complaint. In the course of Tewell’s employment by the Church defendants, he had an affair with plaintiffs wife, while simultaneously acting as the couple’s marriage counselor. In addition to serving as a marriage counselor, Tewell presided over church-sponsored functions, including weekend “marriage retreats,” which plaintiff and his wife attended with Tewell’s encouragement, both before and after the affair surfaced in 2002. Plaintiff alleges that in May of 2002, while Tewell was counseling plaintiff and his wife, Tewell asked the couple to come to his home and told them that three members of the Church had told the clerk of the Church that Tewell was having an affair with plaintiffs wife. Plaintiffs wife and Tewell assured plaintiff that the accusations were false. Plaintiff then asked the Church to investigate and was advised that the proper procedure was to file a grievance. Prior to filing the grievance, plaintiff and his wife met with the clerk, who is alleged in the complaint to be “an agent, servant and/or employee” of the Church defendants, “who urged plaintiff not to file a grievance that would cause an investigation and negative publicity for the defendants and would ultimately result in no findings because the accusations were false.” Plaintiff claims that the clerk caused him to forbear from filing the grievance. Tewell continued to act as the couple’s marriage counselor until January of 2005, when plaintiffs wife admitted that Tewell was in love with her and that Tewell had *976 said that plaintiff did not treat her well. In March 2005, plaintiff confronted Tewell who did not deny the affair. The amended complaint also alleges that the Church defendants received information from other congregants that Tewell was preying on other women to whom he was providing marital counseling. (See, amended complaint 1Í1Í 34, 38 [e].) Plaintiff alleges, on information and belief, that subsequently Tewell was removed as a minister following a hearing and investigation conducted by the Church defendants, during which Tewell and plaintiffs wife admitted they had an affair.
The first cause of action for breach of fiduciary duty alleges that Tewell abused a relationship of trust and confidence that plaintiff had in all three defendants causing severe emotional harm. The second cause of action is for negligent retention and supervision. It alleges that the Church defendants knew, or should have known, about the affair in May of 2002, failed or refused to investigate, or take any action against Tewell or to stop him from counseling plaintiff and his wife about their marriage, and dissuaded plaintiff from filing a grievance, all of which caused and aggravated plaintiffs emotional distress. The third cause of action is for intentional infliction of emotional distress.
The threshold issue is whether the court would impinge on ecclesiastical issues in violation of the First Amendment if it were to allow the claims to go forward. The First Amendment permits courts to decide secular disputes involving religious institutions so long as they can be decided on neutral legal principles, rather than religious doctrine, policy or practice. (Avitzur v Avitzur, 58 NY2d 108 [1983] [enforcing Ketubah, Jewish marital contract, in which husband agreed to appear before Beth Din, a religious tribunal]; Park Slope Jewish Ctr. v Congregation B’nai Jacob, 90 NY2d 517, 521 [1997] [deciding property dispute between religious sects]; Berger v Temple Beth-El of Great Neck, 303 AD2d 346, 348 [2d Dept 2003] [defamation]; see also, Sieger v Union of Orthodox Rabbis of US. & Can., 1 AD3d 180, 182 [1st Dept 2003] [to extent plaintiff has alleged defamatory statements which can be evaluated solely by application of neutral principles of law and do not implicate matters of religious doctrine and practice, they are not barred by Establishment Clause]; Wisconsin v Yoder, 406 US 205, 215 [1972] [“to have the protection of the Religion Clauses, the claims must be rooted in religious belief. . . ”].)
In this case, the claims alleged in the amended complaint can be decided in accordance with neutral principles of law without *977 resort to religious tenets, policies or procedures. Breach of fiduciary duty, negligent hiring and retention, and intentional infliction of emotional distress are well-defined bodies of civil law. Consequently, the First Amendment is not implicated.
A. Breach of Fiduciary Duty
Whether a claim of breach of fiduciary duty against a clergyman who provides secular counseling will lie is an open question of law in New York State. Defendants’ motions are principally based on the case of Wende C. v United Methodist Church, N.Y. W. Area (6 AD3d 1047, 1050 [4th Dept 2004]), in which the plaintiffs, a married couple, sued their pastor because he breached “the sacred trust between counselor and careseeker in the course of the ministerial relationship” when he had an affair with the wife while counseling the couple. (Id.) The Fourth Department dismissed the complaint, holding that New York State does not recognize a cause of action for clergy malpractice because it would impermissibly interfere in ecclesiastical matters and “insofar as [the claim] may be construed to allege a breach of fiduciary duty,” it was essentially the same as an action for clergy malpractice. (Id.)
However, when the case reached the Court of Appeals, it held that the plaintiffs had not pleaded a cause of action for breach of fiduciary duty and explicitly left for another day whether such a cause of action could be brought by a parishioner against a member of the clergy. (Wende C. v United Methodist Church, N.Y. W. Area, 4 NY3d 293, 299 [2005].) In Wende C., the Court of Appeals held that the language of the complaint sounded in clergy malpractice, which would impermissibly require the Court to examine ecclesiastical doctrine to determine the standard of due care owed to parishioners undergoing spiritual counseling. (Id.) Langford v Roman Catholic Diocese of Brooklyn (271 AD2d 494 [2d Dept 2000]), also relied upon by defendants, is distinguishable because the priest acted only as the plaintiffs spiritual counselor, while the plaintiff received secular counseling from a psychiatrist. Hence, whether under New York law a minister who provides secular marital counseling can be sued for breach of fiduciary duty is a case of first impression.
Some states have upheld claims of breach of fiduciary duty against members of the clergy who engage in secular counseling while carrying on a sexual relationship with the counselee or the counselee’s spouse; some agree with the reasoning of the Fourth Department that breach of fiduciary duty and clergy malpractice are indistinguishable, while some allow a claim for *978 emotional distress instead of, or in addition to, breach of fiduciary duty. (See F.G. v MacDonell, 150 NJ 550, 696 A2d 697 [1997] [allowing breach of fiduciary duty and negligent infliction of emotional distress against rector/counselor]; Doe v Evans, 814 So 2d 370 [Fla 2002] [allowing claim for breach of fiduciary duty against marriage counselor/clergy]; Amato v Greenquist, 287 Ill App 3d 921, 679 NE2d 446 [1st Dist, 3d Div 1997] [rejecting breach of fiduciary duty claim, but allowing claim for intentional infliction of emotional distress against pastor/marriage counselor]; Destefano v Grabrian, 763 P2d 275, 284 [Colo 1988] [allowing claims for breach of fiduciary duty and emotional distress]; Sanders v Casa View Baptist Church, 898 F Supp 1169, 1176 [ND Tex 1995] [upholding breach of fiduciary duty claim under Texas law].)
Breach of fiduciary duty is a tort that arises from a violation of a relationship of trust and confidence, such as that of an agent to his principal or a lawyer to his client. (Rich v New York Cent. & Hudson Riv. R.R. Co., 87 NY 382, 390 [1882].) It is well settled that a fiduciary has a duty to act with the utmost honesty and loyalty:
“Many forms of conduct permissible in a workaday world for those acting at arm’s length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty.” (Meinhard v Salmon, 249 NY 458, 464 [1928].)
It is a breach of the duty for the fiduciary to injure or act contrary to the interests of the person to whom the duty of loyalty is owed. (Mandelblatt v Devon Stores, 132 AD2d 162, 168 [2d Dept 1987].) In New York, a fiduciary relationship requires a showing of a relation between two persons “when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.” (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005].) Emotional and psychological damages are recoverable on a claim for breach of fiduciary duty. (Tighe v Ginsberg, 146 AD2d 268, 272 [4th Dept 1989].)
Applying these principles to the case before this court, Tewell’s undertaking to act as marriage counselor made him a *979 fiduciary. It put him in a position of trust, in which he had a duty to act honestly and advise plaintiff in furtherance of plaintiffs interest in preserving his marriage, which was the object of the relationship. The amended complaint alleges acts of disloyalty and injurious conduct by Tewell. This is not just a case where a minister engaged in a consensual sexual relationship while acting as a spiritual adviser. Plaintiffs allegations, if proven, are sufficient to sustain a claim of breach of fiduciary duty against Tewell, for deceiving plaintiff and undermining his marriage, while continuing to act as his marriage counselor.
However, the Church defendants are correct that if Tewell was having a sexual relationship with plaintiffs wife, he was acting outside the scope of his duties, negating vicarious liability for breach of fiduciary duty. Accordingly, the first cause of action is dismissed as against the Church defendants.
B. Negligent Supervision and Retention
Where an employer cannot be held to be vicariously hable under a theory of respondeat superior, a claim for negligent supervision or retention may still lie. (Sheila C. v Povich, 11 AD3d 120, 129 [1st Dept 2004].) A claim for negligent supervision or retention arises when an employer places an employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in supervising or retaining the employee. (Id.; Kenneth R. v Roman Catholic Diocese of Brooklyn, 229 AD2d 159 [2d Dept 1997] [negligent retention of priest where church alleged to have notice that he was molesting children].) An essential element of these causes of action are that the employer knew or should have known of the employee’s propensity for the conduct that caused the injury. (Id.)
Plaintiff has stated a valid claim for negligent retention and supervision against the Church defendants. A fair reading of the complaint is that Tewell engaged in marriage counseling and conducted church-sponsored marriage retreats on their behalf. Assuming that the Church defendants knew, or should have known, that Tewell was having sexual relations with plaintiffs wife, then they could be held liable for negligent supervision and/or retention in light of the allegations that: (1) the clerk received accusations from three parishioners about the affair; (2) the plaintiffs wife was not an isolated case; (3) the clerk dissuaded plaintiff from filing a grievance which would have resulted in an investigation; and (4) the clerk represented that the accusations were false when he knew, or should have *980 known, otherwise. Plaintiff alleges that the clerk was told that Tewell was having an affair with plaintiffs wife and, for 21/z years, the Church defendants permitted the marital counseling to continue, while actively discouraging plaintiff from initiating an investigation. Thus, accepting plaintiffs version of the facts, the Church defendants knew, or should have known, of Tewell’s propensity to engage in harmful conduct, but decided to look the other way.
C. Intentional Infliction of Emotional Distress
Plaintiffs claim for intentional infliction of emotional distress should be dismissed. Such a claim must allege four elements— outrageous conduct that exceeds the bounds of decency tolerable in civilized society, intent to cause severe emotional distress, a causal connection between the conduct and injury, and severe emotional distress. (Howell v New York Post Co., 81 NY2d 115, 121 [1993]; Fischer v Maloney, 43 NY2d 553, 558 [1978].) Since intentional infliction of emotional distress may encompass otherwise lawful conduct, it is a theory of liability that is to be invoked only as a last resort. (McIntyre v Manhattan Ford, Lincoln-Mercury, 256 AD2d 269, 270 [1st Dept 1998].) When the complained-of conduct is embraced by a traditional tort which provides for emotional damages, the cause of action for intentional infliction of emotional distress should be dismissed. (Id.; Demas v Levitsky, 291 AD2d 653 [3d Dept 2002], lv dismissed 98 NY2d 728 [2002].) Such is the case here where viable claims for the traditional torts of breach of fiduciary duty and negligent supervision and/or retention exist. Moreover, the Appellate Division in Wende C. (6 AD3d at 1049, supra) spoke to this issue and determined that conduct similar to that alleged here is not so extreme and outrageous as to give rise to a claim for intentional infliction of emotional distress. The Court of Appeals left undisturbed the dismissal of the emotional distress claim in Wende C. (supra). Accordingly, the claim for intentional infliction of emotional distress must be dismissed.
Accordingly, it is ordered that the defendants’ motions to dismiss are granted solely to the extent that: (1) the first cause of action for breach of fiduciary duty is dismissed as against defendants Fifth Avenue Presbyterian Church and the Presbytery of New York City; and (2) the third cause of action for intentional infliction of emotional distressed is dismissed against all defendants; and in all other respects the motions are denied.

 Plaintiff served the amended complaint while the motion was pending. The briefs submitted by the Church defendants state that they do not object to the court deciding the motion on the basis of the amended complaint. The defendants addressed the new allegations and causes of action in their reply papers. Accordingly, the court’s decision is addressed to the amended complaint, which the court finds meritorious, as will be discussed below, and the court hereby grants plaintiff leave to amend nunc pro tunc.