Elio v Putnam County N.Y. (2024 NY Slip Op 50983(U))

[*1]

Elio v Putnam County N.Y.

2024 NY Slip Op 50983(U)

Decided on July 30, 2024

Supreme Court, Putnam County

Mole, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 30, 2024
Supreme Court, Putnam County

Andrew N. Elio, Plaintiff,

against
Putnam County New York, PUTNAM COUNTY CORRECTIONAL FACILITY, PUTNAM COUNTY SHERIFF'S DEPARTMENT, DEPUTY SHERIFF CASIDY, DEPUTY SHERIFF VIHERVUORI, and NURSE BOBBY DOE, Defendants.

Index No. 00523/2024

Portale Randazzo LLP
Attorneys for the County Defendants
Attn: James A. Randazzo, Esq.
245 Main Street — Suite #605
White Plains, NY 10601
Andrew N. Elio
Plaintiff, Pro Se

Anthony R. Molé, J.

In accordance with CPLR 2219 (a), the following papers were read and considered on the jointly filed motion of the defendants PUTNAM COUNTY NEW YORK, PUTNAM COUNTY CORRECTIONAL FACILITY, PUTNAM COUNTY SHERIFF'S DEPARTMENT, DEPUTY SHERIFF CASIDY, and DEPUTY SHERIFF VIHERVUORI, made pursuant to CPLR 3211 (a) (7), for an order dismissing plaintiff's complaint in its entirety as against said defendants (mot. seq. no.
1):
[*2]Papers:
• Notice of Motion; Affirmation in Support, Exhibits A-B
• Plaintiff's Affidavit in Opposition; Exhibits A-I
• Reply Affirmation in Further Support of Motion to Dismiss
Prefatorily, this Court takes judicial notice of the undisputed court records, the filings in this action, and the decisions and orders from the Appellate Division, Second Department issued on December 28, 2022 in Tedesco v Elio (211 AD3d 1072 [2d Dept 2022]) and (211 AD3d 1074 [2d Dept 2022]) — which, for all intents and purposes, precipitated this action (see Matter of Khatibi v Weill, 8 AD3d 485, 485 [2d Dept 2004]).
Upon review of the aforesaid papers and record, the Court finds and determines as follows:
I. Background
In 2016, plaintiff was renovating his home, a single-family residence, situated in the Town of Carmel when he illegally encroached onto certain real property owned by others. The following year, plaintiff was sued in this Court by neighboring property owners for trespass and injunctive relief based on claims that he was encroaching on their adjoining property. That action was assigned to the Hon. Victor G. Grossman, J.S.C. under Index No. 500718/2017. In that action, plaintiff, represented by attorneys, claimed adverse possession of a 28-inch encroachment area with respect to an L-shaped retaining wall that was intruding onto the property of the neighboring owners.
After a bench trial, Justice Grossman decided in favor of the neighboring property owners and issued a judgment, dated August 14, 2019, directing plaintiff to remove the L-shaped retaining wall at his own expense (the 2019 judgment). In doing so, Justice Grossman determined, among other findings, that plaintiff failed to establish adverse possession of the 28-inch encroachment area. Justice Grossman's 2019 judgment was affirmed on appeal by the Appellate Division, Second Department on December 28, 2022 (Tedesco v Elio, 211 AD3d 1072 [2d Dept 2022]).
Based on plaintiff's failure to timely remove the L-shaped retaining wall in accordance with the 2019 judgment, the neighboring property owners moved to hold plaintiff in civil contempt. Justice Grossman conducted a hearing on the contempt motion that commenced in August 2020 and concluded the following month.
The neighboring property owners prevailed against plaintiff on the contempt hearing. In an "Order of Contempt and Arrest" dated September 30, 2020, Justice Grossman granted the motion and, inter alia, held plaintiff in civil contempt; fined him the sum of $100 per day nunc pro tunc to August 1, 2020, payable to the neighboring property owners until the L-shaped retaining wall was removed; and directed plaintiff's incarceration at the Putnam County Jail on weekends starting December 4, 2020 until he submitted proof that the wall had been removed and he had paid all fines and Sheriff's fees. A judgment to that effect was entered on November 24, 2020 upon the contempt order (the 2020 judgment).
As a defendant in that action, plaintiff also appealed the contempt order and the 2020 judgment. The Second Department reversed the 2020 judgment and vacated the contempt order, ruling that the civil contempt motion should have been denied (Tedesco v Elio, 211 AD3d at 1077). The Second Department found that the neighboring property owners failed to prove the [*3]elements of a civil contempt by clear and convincing evidence (see id. at 1076). In so holding, the Second Department rationed that plaintiff had "demonstrated that his delay in removing the L-shaped retaining wall was occasioned by the COVID—19 pandemic" (id. at 1077); and ruled that plaintiff had also "demonstrated an inability to timely remove the L-shaped retaining wall given the cost of the project and his financial hardship occasioned, in part, by the COVID—19 pandemic" (id.).
Recitation of these facts and a procedural discussion of the trespass action involving Mr. Elio as a party-defendant is important in order to examine the context of this action.
Relevant here, plaintiff adhered to Justice Grossman's contempt order. On December 4, 2020, plaintiff began reporting to the County jail on weekends every Friday at 5 p.m. until Sunday at 5 p.m. The last date that plaintiff was imprisoned in the County jail was June 27, 2021. He was released from custody on that date. Plaintiff, acting pro se, filed a notice of claim with the County on March 28, 2023. Plaintiff's incarceration is the impetus for him filing this lawsuit.
Plaintiff, pro se, commenced this action on March 26, 2024 due in large part to his court-ordered incarceration stemming from the contempt order. The defendants named in this lawsuit are the County of Putnam, the Putnam County Sheriff's Department, the Putnam County Correctional Facility, and two deputy sheriffs (hereinafter collectively referred to as the County defendants). Plaintiff has also joined an unnamed county employee as a party defendant — namely, Nurse Bobby Doe, who allegedly works at the County jail.
Plaintiff claims that the County, through the acts of jail officials and employees, committed misconduct against him in various ways. More specifically, plaintiff filed the subject complaint against the County defendants to recover damages for false arrest (first cause of action); unlawful search and seizure (second cause of action); false imprisonment (third cause of action); failure to have adequate quarantine protocols in place during the COVID-19 pandemic (fourth cause of action); unsanitary conditions in the County jail (fifth cause of action); defamation (six cause of action); abuse of authority (seventh cause of action); coercion (eighth cause of action); discrimination (ninth cause of action); withholding of medical attention when he was jailed in the County correctional facility (tenth cause of action); cruel and unusual punishment (eleventh cause of action); invasion of privacy (twelfth cause of action); severe emotional distress (thirteenth cause of action); harassment (fourteenth cause of action); loss of wages (fifteenth cause of action); and alienation of affection (sixteenth cause of action). In the complaint, plaintiff is seeking approximately $7.5 million dollars in damages, and he requests for his arrest record to be expunged.
The County defendants, with the exception of defendant Nurse Bobby Doe, filed a pre-answer motion to dismiss the complaint on May 6, 2024 predicated upon plaintiff's failure to file a timely notice of claim, as a condition precedent, in bringing this lawsuit sounding in tort. Plaintiff contests dismissal and filed opposition papers on June 28, 2024. The County defendants, in turn, filed reply papers on July 25, 2024.
A preliminary matter warrants brief mention. The motion was initially returnable May 30, 2024. The parties consented to an extension for plaintiff to file his opposition papers, which he did on June 28, 2024. Subsequently, the parties consented to an extension for the County defendants to file their reply papers — which, by court notice, imposed a deadline of July 12, 2024, establishing a new return date on the motion (see generally CPLR 2214; 22 NYCRR 202.8 [a] ["Uniform Civil Rules for the Supreme Court and the County Court"]). The County [*4]defendants belatedly filed their reply papers. But because no prejudice has resulted to plaintiff from the belated filing, the error shall be disregarded (see CPLR 2001). The subject motion is deemed fully submitted and ripe for decision.[FN1]

II. Discussion and Analysis
A. The Parties' Arguments and Contentions
Initially, the County defendants contend that plaintiff's claims are time barred under General Municipal Law § 50—e since he failed to serve a timely notice of claim upon the County within 90 days from when his claims arose on June 27, 2021 — such being a condition precedent to bringing this action — and plaintiff belatedly filed the notice of claim on March 28, 2023 (more than 18 months after the deadline to do so had expired). The County defendants assert that plaintiff was required to serve the notice of claim on or before September 27, 2021, which would be within the requisite 90-day time period.
The County defendants reject plaintiff's belief that any COVID-related tolls detrimentally impacted his ability to file a timely notice of claim and to commence this lawsuit. They urge that plaintiff's erroneous decision to wait until the Second Department rendered a decision on appeal of the contempt order is immaterial to this action, inasmuch as the pendency of that appeal did not toll the applicable statutes of limitations for the underlying causes of action. The Court agrees.
Also, the County defendants rely on General Municipal Law § 50—i (1) in arguing that plaintiff's claims are time barred because he failed to allege in the complaint "that at least [30] days have elapsed since the service of such notice [of claim] . . . and that adjustment or payment thereof has been neglected or refused" by the County (id.).
In addition, the County defendants contend that County Law § 52 precludes this action against them on the ground that the notice of claim served upon the County did not comply with General Municipal Law § 50—e. The County defendants assert an additional ground for dismissal in contending that plaintiff's claims are time barred by the one-year-and-90-day statute of limitations set forth in General Municipal Law § 50—i.
Plaintiff, in opposition, mostly sets forth factual assertions that are entirely predicated on the trespass action and contempt order, which are not really relevant on this motion and lawsuit. He recounts the events leading up to when he was held in civil contempt. Plaintiff claims that proof of his claim could not be gathered until the Second Department's reversal of the contempt order by its Decision and Order on December 28, 2022. Plaintiff surmises that such date is when the statute of limitations began to accrue for his claims. As explained in greater detail below, plaintiff's argument in this respect is erroneous.
Plaintiff further states that if the County defendants' motion to dismiss is denied, he will proceed to file a motion to change venue to another county in order "to avoid any prejudice that [*5]may occur by having a trial involving so many parties that work and possibly reside in Putnam County[,] which could lead to biases against [him] in this action." Contrary to his belief, such a forecast is irrelevant for the purposes of deciding the motion that is presently before this Court.
In opposition, plaintiff also asks for this Court "to consider recusing . . . without a motion being filed" based on his belief that the undersigned's decision on this motion may be "skew[ed]" as a fellow judicial colleague of Justice Grossman in Putnam County. Plaintiff's purported recusal motion is not properly before the Court and posited in pure assumption.[FN2]

B. The Notice of Claim and the General Municipal Law Requirements
Where, as here, plaintiff endeavors to pursue a claim against the County and its agencies and officers, he was required to properly complete two procedural steps. First, plaintiff must satisfy the notice of claim requirements under the General Municipal Law. "The purpose of the notice of claim is to enable the public corporation to investigate claims and obtain evidence promptly" (David D. Siegel & Patrick M. Connors, New York Practice § 32 at 43 [6th ed 2018]).
Second, plaintiff must commence the action within the one-year-and-90-day statute of limitations period and plead compliance with the notice of claim requirements (see id. at 42). Plaintiff did neither in this case. Such oversight is critically fatal to maintaining this action.
"General Municipal Law § 50—e requires that service of a notice of claim is a condition precedent to the commencement of an action against a county and, inasmuch as the Sheriff's Department is a division of the county, a notice of claim is required to be filed as to the action against it. However, service of a notice of claim upon an officer, appointee[,] or employee of a county is not a condition precedent to the commencement of an action against such person unless the county is required to indemnify such person (see General Municipal Law § 50—e [1] [b]). The Public Officers Law provides that a county shall indemnify its employees in the amount of any judgment obtained against them for claims which arise while the employee is acting within the scope of his or her employment" (Bardi v Warren County Sheriff's Dept., 194 AD2d 21, 21-24 [3d Dept 1993]; see Public Officers Law §§ 18 [1] [a], [b]; [4] [a]).
Here, it is undisputed that plaintiff served the notice of claim upon the County defendants, including the Putnam County Sheriff's Department and the deputy sheriffs, more than 90 days after his claims accrued. The County defendants correctly contend that they are entitled to dismissal of the action, including the state common-law causes of action alleging false arrest and false imprisonment, on the ground that the instant action is time-barred. For the reasons delineated herein, the Court holds that the complaint must be dismissed.
"General Municipal Law § 50—i (1) (c) provides, in pertinent part, that no personal injury action shall be prosecuted or maintained against a city unless it is commenced within one year [*6]and 90 days after the happening of the event upon which the claim is based. Although causes of action to recover damages for intentional torts, such as false arrest and false imprisonment, are generally subject to a one-year period of limitations (see CPLR 215 [3]), intentional tort causes of action asserted against municipal defendants must be commenced within the one-year-and-90-day statute of limitations contained in General Municipal Law § 50—i, which takes precedence over the one-year period of limitations provided for in CPLR 215" (Williams v City of New York, 153 AD3d 1301, 1305 [2d Dept 2017] [internal quotation marks and citation omitted]).
"Timely and proper service of a notice of claim which, inter alia, sufficiently identifies the claimant, states the nature of the claim and describes 'the time when, the place where and the manner in which the claim arose,' is a condition precedent to the commencement of a common-law tort action against a municipality" (Santoro v Town of Smithtown, 40 AD3d 736, 737 [2d Dept 2007], quoting General Municipal Law § 50—e [1] [a]; see Matter of Pil-Yong Yoo v County of Suffolk, 215 AD3d 852, 853 [2d Dept 2023]). Before commencing a tort action against a municipality, a party must serve a notice of claim within 90 days "after the claim arises" (General Municipal Law § 50—e [1] [a]). A cause of action for false arrest and/or imprisonment accrues when a party is released from confinement.
Here, the Court holds that plaintiff's causes of action against the County Defendants, which accrued on June 27, 2021, are time-barred under the General Municipal Law (see General Municipal Law §§ 50—e [1] [a]; 50—i [1] [a]; see also Patrella v County of Suffolk, 154 AD3d 772, 773 [2d Dept 2017]; Alex-Mitchell: El v State of New York, 2 AD3d 549, 551 [2d Dept 2003]). Plaintiff served the notice of claim upon the County on March 28, 2023. The notice of claim reflects that plaintiff last reported to the County jail to serve the remainder of his incarceration period on June 25, 2021, and he was released on "June 27, 2021 at about 5 p.m."
Based on the timing of when plaintiff was released from the County jail on June 27, 2021, the notice of claim was not served within 90 days after the alleged wrongful acts of the County defendants occurred (see General Municipal Law §§ 50—e [1] [a]; 50—i [1] [a]). This deficiency mandates a dismissal of the complaint against the County defendants.
The County defendants properly assert that plaintiff's claims with respect to false arrest and false imprisonment are untimely because they accrued on June 27, 2021, the date when he was released from the County jail (see Britt v Legal Aid Socy., 95 NY2d 443, 448 [2000]; McQueen v City of New York, 209 AD3d 469, 470 [1st Dept 2022]; Williams v City of New York, 153 AD3d at 1305). Plaintiff did not file the complaint until March 26, 2024, almost three years after he was released from jail. This is well beyond the one-year-and-90-day statute of limitations.
Indeed, the plain meaning of the language in General Municipal Law § 50-i (1) is instructive (see Matter of Freudenthal v County of Nassau, 283 AD2d 6, 9 [2d Dept 2001], affd 99 NY2d 285 [2003]). The Court finds that plaintiff's state common-law claims for false arrest and imprisonment accrued upon plaintiff's release from the Putnam County Jail on June 27, 2021. Hence, his notice of claim was untimely with respect to those claims because it was not served until March 28, 2023 — more than 90 weeks later. The limitations period of one year and 90 days prescribed in General Municipal Law § 50-i (1) had expired before plaintiff filed this lawsuit ("the action or . . . proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based").
The Court reiterates the well-settled legal principle that "[a] timely and sufficient notice of claim is a condition precedent to asserting a tort claim against a municipality" (Williams v [*7]City of New York, 153 AD3d at 1304). "The purpose underlying the notice of claim requirement is to provide a municipality with sufficient information to enable it to promptly investigate the claim and ascertain its potential exposure to liability. General Municipal Law § 50—e (2) sets forth the criteria for the contents of a notice of claim" (id. [internal citations omitted]). Here, plaintiff belatedly served a notice of claim on the County defendants prior to commencing this action. He filed this lawsuit almost three years after the underlying claims accrued. Plaintiff thus failed to satisfy a condition precedent to filing this lawsuit against a municipality (see Brown v City of New York, 95 NY2d 389, 392-393 [2000]). 
Plaintiff's filing of the late notice of claim was served without leave of court and outside of the 90-day requirement under General Municipal Law § 50—e. His failure to serve the notice within 90 days, in effect, makes it a nullity (see Friedman v City of New York, 19 AD3d 542, 543 [2d Dept 2005]). Irrespective of the merits of this action, the notice of claim was not filed in technical compliance with the governing statutes.
Furthermore, the Court finds that the County defendants are also entitled to dismissal of the complaint based upon plaintiff's noncompliance with the notice of claim as a condition precedent of General Municipal Law § 50—e, being applicable to counties such as Putnam County, pursuant to County Law § 52 (see Mills v County of Monroe, 59 NY2d 307, 309 [1983], cert denied 464 US 1018 [1983]). As is relevant here, County Law § 52 (1) broadly provides that "[a]ny claim . . . against a county for damage [or] injury . . . and any other claim for damages arising at law or in equity, alleged to have been caused . . . by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with [General Municipal Law § 50—e]."
In this matter, plaintiff's complaint seeks damages for, inter alia, claims of false arrest and false imprisonment against the County. Based on County Law § 52 (1), General Municipal Law § 50—e (1) (a) required service of a notice of claim within 90 days after those claims arose. Plaintiff belatedly filed the notice of claim with the County on March 28, 2023. He readily admits his belatedness in filing the notice of claim, submitting that it was "approximately 90 days after the Second Department reversed Justice Grossman's [civil contempt order]." Given plaintiff's failure to comply with the notice of claim provision of General Municipal Law § 50—e, as imposed by County Law § 52, the County defendants' motion to dismiss must be granted (see Sager v County of Sullivan, 145 AD3d 1175, 1176 [3d Dept 2016], lv denied 29 NY3d 902 [2017]; Matter of Csaszar v County of Dutchess, 95 AD3d 1009, 1010 [2d Dept 2012]).
Moreover, the County defendants are also correct in contending that plaintiff failed to comply with General Municipal Law § 50—i (1) (b), which requires that the complaint allege that at least 30 days have elapsed since service of the notice of claim and that adjustment or payment of the claim has been neglected or refused. "Compliance with General Municipal Law § 50—i (1) (b) has been held to constitute a condition precedent to the commencement of an action" (Rushmore v Hempstead Police Dept., 211 AD2d 776, 777-778 [2d Dept 1995]).
"A plaintiff must not only plead in the complaint that he [or she] served a notice of claim but that the notice was served at least 30 days prior to commencement of the action and in that time the defendant[s] neglected or refused to adjust or satisfy the claim" (Smith v Scott, 294 AD2d 11, 21 [2d Dept 2002]). "Failure to comply with provisions requiring notice and presentment of claims prior to the commencement of litigation ordinarily requires dismissal. The mandatory 30-day period between service of the notice of claim and the summons and complaint [*8]serves the salutary purpose of allowing municipal defendants to conduct an investigation and examine the plaintiff with respect to the claim, and to determine whether the claims should be adjusted or satisfied before the parties are subject to the expense of litigation" (Davidson v Bronx Mun. Hosp., 64 NY2d 59, 62 [1984] [internal citations omitted]).
Bearing those principles in mind, there is no question that plaintiff failed to specifically allege in the complaint that his notice of claim was served upon the County at least 30 days prior to commencement of this action. Plaintiff notably concedes this point in his opposition papers. Thus, an additional ground for dismissing the complaint is due to plaintiff's failure to comply with the condition precedent set forth in General Municipal Law § 50—i (1) (b) (see Davidson v Bronx Mun. Hosp., 64 NY2d at 62; Smith v Scott, 294 AD2d at 21-22).
To the extent that plaintiff requests for this Court to extend his time to serve a notice of claim, such application is not properly before this Court for consideration and, in any event, overly belated. An application for leave to file a late notice of claim may be "made before or after the commencement of the action but not more than one year and 90 days after the cause of action accrued" (Pierson v City of New York, 56 NY2d 950, 954 [1982] [emphasis added]). Where that time expires before the application for an extension is made, "the court lack[s] the power to authorize late filing of the notice [of claim]" (id. at 956). In other words, this Court would be without judicial discretion and constrained to deny such an application because it "cannot extend the time to serve a notice of claim longer than the applicable statute of limitations" (Siegel & Connors, New York Practice § 42, at 45). 
Plaintiff's claims accrued on June 27, 2021. He commenced this action on March 26, 2024. Because the time within which to commence an action against the County defendants had expired, this Court would lack the power to authorize late filing of the notice (see e.g. Bennett v City of Buffalo Parks & Recreation, 192 AD3d 1684, 1685-1686 [4th Dept 2021]; Young v New York City Health & Hosps. Corp., 147 AD3d 509, 509 [1st Dept 2017]).
Irrespective of such a hypothetical application, plaintiff never, in fact, sought leave to serve a late notice of claim under General Municipal Law § 50—e (5). For instance, he never commenced a proceeding or moved under General Municipal Law § 50—e (5) for leave to serve a late notice of claim or to deem a late notice of claim timely served nunc pro tunc. Nor did plaintiff move within the requisite time period for leave pursuant to that statute (see e.g. Melgarejo v City of New York, 227 AD3d 593, 594 [1st Dept 2024]; Matter of Davis v County of Westchester, 78 AD3d 698, 698-699 [2d Dept 2010]).
Plaintiff's beliefs that his causes of action were tolled in light of the COVID-19 pandemic and began to accrue on December 28, 2022 — the date when the Second Department reversed the contempt order on appeal — are mistaken, rejected, and incorrect as a matter of law as a pure legal argument.
"A toll suspends the running of the applicable period of limitation for a finite time period, and 'the period of the toll is excluded from the calculation of the relevant time period'" (Brash v Richards, 195 AD3d 582, 582 [2d Dept 2021], quoting Chavez v Occidental Chem. Corp., 35 NY3d 492, 505 n 8 [2020] [internal brackets omitted]). On March 20, 2020, former Governor Andrew M. Cuomo signed Executive Order No. 202.8 in response to the public health crisis caused by the COVID-19 pandemic (see Executive Order [A. Cuomo] No. 202.8 [9 NYCRR 8.202.8]).
"The Executive Order 'tolled' any 'specific time limit for the commencement, filing, or service of any legal action until April 19, 2020.' That toll was extended through several [*9]subsequent executive orders, the last of which remained in effect until November 3, 2020" (Murphy v Harris, 210 AD3d 410, 411 [1st Dept 2022], quoting 9 NYCRR 8.202.8 [ellipses omitted]).
During the heightened crisis of COVID, Governor Cuomo issued a series of nine subsequent executive orders extending the suspension or tolling periods, eventually through November 3, 2020 — when any tolling periods would conclude. Notably, Executive Order (A. Cuomo) No. 202.72 (9 NYCRR 8.202.72), issued on November 3, 2020, reiterated that the "toll" would no longer be in effect as of November 4, 2020 (see Executive Order [A. Cuomo] No. 202.72 [9 NYCRR 8.202.72]; see Brash v Richards, 195 AD3d at 584-585).
As to the timeliness of this lawsuit, plaintiff began serving the weekend jail stints on December 4, 2020 in compliance with the contempt order. His jail incarceration finally concluded on June 27, 2021. He filed the notice of claim on March 28, 2023. Plaintiff's formal commencement of this action on March 26, 2024 was untimely. The Executive Orders in connection with COVID have no bearing here. The foregoing undercuts plaintiff's argument that COVID-19 tolled the periods for filing the notice of claim or the applicable statutes of limitations period in initiating this action (see Cortes v City of New York, 226 AD3d 501, 502 [1st Dept 2024]; Brash v Richards, 195 AD3d at 584-585).
What's more, the causes of action asserted by plaintiff here did not accrue upon the exhaustion of appellate review and remedies from an order in a separate and distinct action. This lawsuit and the trespass action where Mr. Elio was a party defendant do not arise from the same set of transactions and do not have a complete identity of parties and causes of action. In any event, the Court notes that plaintiff's "ignorance of the law does not constitute a reasonable excuse" (Matter of Nunez v Village of Rockville Ctr., 176 AD3d 1211, 1214 [2d Dept 2019]; see Matter of Bhargava v City of New York, 130 AD3d 819, 820 [2d Dept 2015]).[FN3]

C. Dismissal as to Defendant Nurse Bobby Doe
The Court also deems it appropriate to dismiss the action against defendant "Nurse Bobby Doe" on the merits. It appears that plaintiff named defendant Nurse Bobby Doe in this action under an unknown and fictitious name.
"In order to employ the procedural 'Jane Doe' or 'John Doe' mechanism made available by CPLR 1024, a plaintiff must show that he or she made timely efforts to identify the correct party before the statute of limitations expired" (Holmes v City of New York, 132 AD3d 952, 953 [2d Dept 2015]; see Hall v Rao, 26 AD3d 694, 695 [3d Dept 2006]). Parties should not resort to using fictitious names "unless they exercise due diligence, prior to the running of the statute of [*10]limitations, to identify the defendant by name and, despite such efforts, are unable to do so" (Bumpus v New York City Tr. Auth., 66 AD3d 26, 29-30 [2d Dept 2009]). Any "failure to exercise due diligence" to ascertain the name or identity of the fictious party "subjects the complaint to dismissal as to that party" (id. at 30).
In the complaint, plaintiff simply avers that Nurse Bobby Doe is "currently employed" at the Putnam County jail — nothing more (complaint at 2, ¶ 7). Plaintiff did not amend the complaint to, inter alia, identify the defendant Nurse Bobby Doe by his or her name. Further, plaintiff failed to exercise due diligence to discover the identity of Nurse Bobby Doe prior to the expiration of the statute of limitations (see Temple v New York Community Hosp. of Brooklyn, 89 AD3d 926, 927-928 [2d Dept 2011]).
An "insufficient description" as to Nurse Bobby Doe mandates dismissal with respect to such defendant (see Bumpus v New York City Tr. Auth., 66 AD3d at 30). Plaintiff's failure to specifically identify Nurse Bobby Doe prior to commencing this action was not the result of any mistake but, rather, was the product of his failure to make a genuine attempt in trying to ascertain Nurse Bobby Doe's actual identity (see Hall v Rao, 26 AD3d at 695-696).
Assuming, arguendo, that plaintiff ascertained the actual identity of Nurse Bobby Doe, the complaint as to such defendant would still be subject to dismissal. "An employee may be considered to be acting within the scope of his or her employment regardless of whether the precise act or the exact manner of the injury was foreseen by the employer, so long as 'the general type of conduct may have been reasonably expected'" (Stewart v Westchester Inst. for Human Dev., 136 AD3d 1014, 1018 [2d Dept 2016], quoting Riviello v Waldron, 47 NY2d 297, 304 [1979]). "The failure to timely serve a notice of claim in a tort action against an employee of a municipality who was acting within the scope of his or her public employment and in the discharge of his or her duties when the tort allegedly was committed requires dismissal of the complaint" (Nurena v Westchester County, 120 AD3d 781, 782 [2d Dept 2014] [internal brackets omitted]; quoting Dorce v United Rentals N. Am., Inc., 78 AD3d 1110, 1110 [2010], lv denied 18 NY3d 807 [2012]; see General Municipal Law § 50—e [1] [b]; Miller v Delph, 66 Misc 3d 147[A], *1 [App Term, 1st Dept 2020]).
Here, plaintiff does not specifically allege in the complaint that defendant Nurse Bobby Doe committed tortious conduct towards him at any time when he was confined in jail. Nor does plaintiff identify any incident that occurred within the scope of Nurse Bobby Doe's employment (cf. Stewart v Westchester Inst. for Human Dev., 136 AD3d at 1018). Again, plaintiff's failure to timely serve a notice of claim requires the dismissal of the complaint insofar as asserted against defendant Nurse Bobby Doe, since said defendant was acting within the scope of his or her public employment and in the discharge of his or her duties (see Nurena v Westchester County, 120 AD3d at 782; Miller v Delph, 66 Misc 3d 147[A], at *1).
D. Plaintiff's Causes of Action Cannot be Sustained
Mindful of plaintiff's grievances, plaintiff's remaining allegations in the complaint fail to state a claim. Additional grounds exist for dismissing this action with respect to nearly all of his claims. The Court is thus constrained to dismiss, on the merits, all of plaintiff's causes of action set forth in his complaint for various reasons. Of note, the factual allegations in the complaint for each of the 16 causes of action pleaded by plaintiff are substantively identical in nature.
Affording the complaint the most liberal construction and discerning any causes of action for the intentional torts of false arrest, false imprisonment, defamation, and invasion of privacy, those torts are time-barred by the one-year statute of limitations applicable to those claims (CPLR 215 [3]; Hong Hui Kuang v Jie Wen Zhou, 212 AD3d 579, 580 [1st Dept 2023]). Besides, the complaint fails to state a cause of action for defamation because it does not "set forth the particular words allegedly constituting defamation," or "allege the time, place, and manner of the false statement and specify to whom it was made" (Tsatskin v Kordonsky, 189 AD3d 1296, 1299 [2d Dept 2020]; see CPLR 3016 [a]; Murphy v Certain, 217 AD3d 455, 456 [1st Dept 2023]).
So much of plaintiff's complaint alleging a cause of action for abuse of authority must be dismissed because it is duplicative of the false arrest and abuse of process claims (see Santoro v Town of Smithtown, 40 AD3d at 738). Also, plaintiff cannot recover under a purported harassment claim because "New York does not recognize a common-law cause of action to recover damages for harassment" (id., quoting Daulat v Helms Bros., Inc., 18 AD3d 802, 803 [2005]). Likewise, plaintiff's claims of coercion and "unlawful search and seizure" must be dismissed because they are not cognizable civil claims under New York law (see Murphy v Certain, 217 AD3d at 456).
Plaintiff's purported claim of "severe emotional distress" must be dismissed as he failed to plead the elements required to state a proper claim sounding in intentional infliction of emotional distress — also governed by a one-year statute of limitations (see CPLR 215 [3]; Scifo v Taibi, 198 AD3d 704, 705 [2d Dept 2021]). To the extent he asserts that cause of action, plaintiff was required to plead "extreme and outrageous conduct, the intentional or reckless nature of such conduct, a causal relationship between the conduct[,] and the resulting injury, and severe emotional distress" (Hyman v Schwartz, 127 AD3d 1281, 1283 [3d Dept 2015] [internal quotation marks and citation omitted]). "[T]he alleged conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be utterly intolerable in a civilized community'" (id., quoting Howell v New York Post Co., 81 NY2d 115, 121 [1993] [internal brackets and ellipses omitted]).
Here, reading the allegations in the complaint liberally and accepting them as true, the Court finds that the alleged conduct of the County defendant does not rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and was utterly intolerable in a civilized community" (Marmelstein v Kehillat New Hempstead: Rav Aron Jofen Community Synagogue, 11 NY3d 15, 22 [2008] [internal quotation marks, brackets, and ellipses omitted]; see Drimer v Zionist Org. of Am., 194 AD3d 641, 642 [1st Dept 2021]).
The Court concludes that dismissal is also appropriate to the extent plaintiff purports to plead a cause of action for negligent infliction of emotional distress — requiring plaintiff to show "a breach of a duty owed to him . . . which unreasonably endangered his . . . physical safety, or caused him . . . to fear for his . . . own safety" (Chiesa v McGregor, 209 AD3d 963, 966 [2d Dept 2022] [internal quotation marks and citation omitted]). This cause of action, sounding in negligence, includes the elements of a defined duty, a breach of that duty, and proximate causality between the breach and plaintiff's injuries (see Ornstein v New York City Health & Hosps. Corp., 10 NY3d 1, 6 [2008]; Taggart v Costabile, 131 AD3d 243, 253 [2d Dept 2015]).
Critically though, "[a] negligent infliction of emotional distress cause of action must fail [*11]where, as here, no allegations of negligence appear in the pleadings" (Chiesa v McGregor, 209 AD3d at 966). The assertions in the complaint are replete with allegations that the County defendants "forced" him to do certain things when he reported to the County jail. Therefore, such allegations are premised on intentional conduct, not negligence (see Santana v Leith, 117 AD3d 711, 712 [2d Dept 2014]).
Plaintiff's claim that he sustained involuntary past loss of wages or income is not a sustainable cause of action as pled in the complaint. Generally, "[a] plaintiff bears the burden of proving loss of wages, which must be established with reasonable certainty" (Tassone v Mid-Valley Oil Co., 5 AD3d 931, 932 [3d Dept 2004], lv denied 3 NY3d 608 [2004]). A party's loss of earnings or income is an element of damages in a negligence action. However, plaintiff's claim in this regard is speculative based on the allegations set forth in the complaint (see generally McKithen v City of New York, 292 AD2d 352, 354 [2d Dept 2002]).
Additionally, plaintiff's sixteenth cause of action asserting "alienation of affection" is no longer recognized as a tort in this State and is prohibited by the Civil Rights Law from being imposed as a basis for tort liability (see Civil Rights Law § 80-a ["(t)he right() of action to recover sums of money as damages for alienation of affections . . . (is) abolished"]; id. at § 84; see also Wende C. v United Methodist Church, NY W. Area, 6 AD3d 1047, 1051 [4th Dept 2004], affd 4 NY3d 293 [2005]).
Plaintiff's causes of action relative to the County defendants' alleged failure to have adequate quarantine protocols in place during the COVID-19 pandemic and withholding of medical attention when he was serving jail time must be dismissed. Although not explicitly framed as such, it appears that plaintiff is asserting a cause of action for inadequate medical care in violation of the Eighth Amendment proscription against the infliction of cruel and unusual punishment.
"It is well established that in order for a prisoner to prevail on a claim that he has been denied adequate medical care, he must demonstrate that prison officials acted in a manner 'sufficiently harmful to evidence deliberate indifference to serious medical needs'" (Matter of De Flumer v Dalsheim, 122 AD2d 872, 873 [2d Dept 1986], lv denied 68 NY2d 612 [1986], quoting Estelle v Gamble, 429 US 97, 106 [1976]). "It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment" (id. [internal quotation marks omitted]). "Mere negligence in diagnosis and treatment by a prison [or jail] physician will not entitle an inmate to relief" (Matter of Bryant v Brunelle, 284 AD2d 936, 936 [4th Dept 2001]; see Estelle v Gamble, 429 US at 105-106; Matter of Shomo v Zon, 35 AD3d 1227, 1227 [4th Dept 2006]).
On its face, plaintiff's complaint fails to state a cognizable claim concerning the denial of adequate medical care. It contains no allegation that he was deprived serious or necessary medical attention when he was incarcerated in jail for the relevant time period. Plaintiff's complaint is devoid of any factual allegation that the County defendants were deliberately indifferent to any serious medical needs that he required during his confinement. Consequently, those causes of action alleging failure to have adequate quarantine protocols in place during the COVID-19 pandemic, withholding of medical attention when he was serving jail time, and cruel and unusual punishment are also dismissed.
The underlying motion is granted in all respects. For the reasons outlined above, the complaint against the County defendants, and Nurse Bobby Doe, must be dismissed in its entirety.
To the extent not specifically addressed herein, plaintiff's remaining claims and contentions have been examined and are without merit. Any other relief requested that is not squarely mentioned herein is rendered academic and denied. Accordingly, it is hereby:
Ordered that the motion of defendants PUTNAM COUNTY NEW YORK, PUTNAM COUNTY CORRECTIONAL FACILITY, PUTNAM COUNTY SHERIFF'S DEPARTMENT, DEPUTY SHERIFF CASIDY, and DEPUTY SHERIFF VIHERVUORI (Mot. Seq. No. 1), under CPLR 3211 (a) (7), for an order dismissing the complaint as against those moving defendants, is GRANTED; and it is further
Ordered that underlying complaint in this action is dismissed in its entirety; and it is further
Ordered that the County defendants shall cause a copy of this Decision and Order to be served upon plaintiff ANDREW N. ELIO, with notice of entry.
This constitutes the decision and order of the Court.
Dated: July 30, 2024
Carmel, New York
E N T E R:
HON. ANTHONY R. MOLÉ
Acting Justice of the Supreme Court

Footnotes

Footnote 1:The Court notes that "[t]he function of reply papers is to address arguments made in opposition to the position taken by the movant," and the movant cannot "introduce new arguments or new grounds for the requested relief" (Matter of Allstate Ins. Co. v Dawkins, 52 AD3d 826, 827 [2d Dept 2008]; see Matter of Kennelly v Mobius Realty Holdings LLC, 33 AD3d 380, 381-382 [1st Dept 2006]).

Footnote 2:Were a recusal motion properly filed, that application may well be denied. A judge's decision on a recusal motion is discretionary. Where recusal is sought based upon impropriety, the trial judge is the "sole arbiter of recusal" and the "decision is within the personal conscience of the court" (People v Moreno, 70 NY2d 403, 405-406 [1987] [internal quotation marks and citations omitted]; see Judiciary Law § 14). "[A] party's unsubstantiated allegations of bias [or prejudice] are insufficient to require recusal" (Tripi v Alabiso, 189 AD3d 2060, 2061 [4th Dept 2020] [internal quotation marks and citation omitted]).

Footnote 3:The Court notes that "an inexperienced litigant who chooses to represent himself or herself in court does so with a degree of risk involved" (Sloninski v Weston, 232 AD2d 913, 914 [3d Dept 1996], lv denied 89 NY2d 809 [1997]; see generally Tiflinskiy v Bell, 25 Misc 3d 140[A], *1 [App Term, 2d Dept, 11th & 13th Jud Dists 2009]). "[A]lthough courts will routinely afford pro se litigants . . . some latitude, a litigant's decision to proceed without counsel does not confer any greater rights than those afforded to other litigants" (Mirzoeff v Nagar, 52 AD3d 789, 789 [2d Dept 2008] [internal quotation marks and citation omitted]).